Our next case this morning is Ashaheed v. Currington, number 20-1237. We'll first hear from Mr. Shapiro. You may proceed. Good morning, your honors, and may it please the court. Colorado prison policy allows Muslim prisoners to keep their beards rather than shave them off. Sergeant Currington knew about the that his beard reflected a core tenet of his documented Muslim faith. Currington nonetheless forced Ashaheed to have his beard shaved off on pain of being thrown in the hole, knowing full well this order would harm Ashaheed's exercise of his religion. And the sole rationale mentioned by Currington, that the policy only exempts full beards from being shaved, was false, illogical, and thus likely a pretext. This case comes down to two basic propositions, your honors. First, the court should not apply some unusually heightened standard to the construction of the second amended complaint. Rather, apply the ordinary rules of pleading to the allegation of animus and lack of legitimate interest and the allegations of specific facts that support those assertions. Second, qualified immunity does not shield Currington because it is clearly established that prison officials cannot prohibit key tenets of a faith without any rational reason and based only on hatred for a religion or its adherents. Mr. Shapiro, on that last point relating to clearly established law, Mr. Ashaheed and the district court relied on the Tennyson case for clearly established law and you rely on appeal on other cases. And the district court did tell the plaintiff to identify supreme court or 10th circuit on point precedent and that didn't seem to happen in the district court. So do you have a problem now in you've got your bulked up arguments on clearly established law, but was the burden met in district court and does that present a problem for you at this point? It does not, your honor. And the reason it does not, well, first of all, the other side has not asserted any waiver issue as far as I understand with regard to that. And moreover, they could not because waiver means that you have to press the same claims and press the same arguments. It has never, to my knowledge, been pressed to the hilt to such an extent that it means that you need to rely on the same cases. Moreover, this is an obvious violation of a clear constitutional right and therefore qualified immunity is overcome regardless of a specific case that is directly on point. Indeed, the supreme court recently reaffirmed in the Taylor versus Rioja's case, a principle it had enunciated previously in Hope versus Peltzer, which is that you don't need a case that is factually similar where a violation is obvious. And it is obvious across the board that government officials violate the first amendment when they repress the exercise of a faith based solely on animus directed toward it, which is adequately pled in this case. And indeed, this court said in the Shrum decision, proof of hostility or discriminatory motivation may be sufficient to prove that a challenged government action violates the free exercise clause. This is not the sort of situation where there is a complex factual texture that makes a rule difficult to apply, say, in the in contrast to, say, the excessive force context where the court has required a higher level of specificity, where there are factors like did the plaintiff have a weapon? Was the situation evolving quickly? It's et cetera. This is the sort of situation where a legal rule is evergreen for all seasons and across the board. You do not as a government official repress the exercise of someone's faith based on animus, whether it is diet, whether it is grooming, whether it is going to the chapel. If you are motivated by animus and you are repressing a core tenant of someone's religion, that is a violation of clearly established law. Indeed, I noticed in your brief, you didn't really discuss, at least in the clearly established discussion, you didn't really establish or discuss the Holt case. And I understand that was in a different context, obviously. But why isn't it helpful here to you or do you think it is in established in the clearly established inquiry? I do think it's helpful, Your Honor. And we did cite it in the briefing. As your question noted, it arises in the RLUIPA statutory context as opposed to the First Amendment context. But in practical terms, there is a Supreme Court case involving beards and the exercise of religion. That's data point one. Data point two is there is a policy that Currington is responsible for enforcing that says there is a right to have a beard if your faith is properly documented, as Asha Heed's was, and with no possible basis for this ludicrous freelance exception that Currington appears to have invented for if you can't grow a beard that is of sufficient length. On top of that, there is the provision or the reality that is simply clearly established as an obvious matter of free exercise law that the government cannot repress religious exercise on the basis of animus. And then as if that were not enough, there is the fact, there is the Grayson case from the Seventh Circuit that addresses animus in the context of a prison grooming regulation. And there is the unpublished Matthews case in this court, which says essentially the same thing. And Matthews holds not only that there was a constitutional violation, but that it is clearly established. And so if the law was so clear that the Matthews panel thought that it wasn't breaking any new ground, that there was even any need to publish a decision holding that it was clearly established. Well, you can't read that into an unpublished decision. You can't read the court's intent or thought process. There could be any number of I understand, Your Honor. But I think that the reasoning is quite clear and quite persuasive in the Matthews case, as well as in the Grayson case, and shows that it is simply a clear, settled core principle of American constitutional law that the government cannot oppress the animus for that faith. Mr. Shapiro, your position is that in an animus-based claim, the justification for a regulation that has peneological grounds for it, that's irrelevant. That's your position when it's an animus-based claim, correct? I wouldn't say that, Your Honor. I want to be very clear. I have no problem with the regulation itself or with the rationality of the regulation and the fact that the regulation itself is animus free. We are challenging Currington's freelance departure and violation of the regulation. The that a prisoner such as Ashahed, whose faith is properly documented in the prison system, does not have to have his beard shaved. And Currington flagrantly violated that rule by forcing Ashahed to submit to being shaved or to be thrown in solitary confinement. That's the crux of the claim. Okay. Then you're basically saying it is not a Turner claim. Isn't that what you're saying? That's what I read, what you just said. This is not a Turner claim. I would clarify it in this way, Your Honor. There are two strands of the First Amendment claim, both of which are sufficient independent claims. One is a claim that an animus-driven discrimination claim. The second is, I would call it a Turner claim. This court made clear in Bowles that a Turner claim does not just mean that there needs to be, does not always involve a policy that does not have a rational, penological interest. It can also be applied to action by a prison official that lacks a legitimate, penological interest. And the Salahuddin case cited in our brief. And so our argument is that there was simply no rational justification for Currington to flagrantly depart from policy and to force Ashahed to shave his beard. And the rationale- Counsel, counsel, could I just follow up on that? Well, once you've explained it that way, it doesn't seem like the second strand and the first strand are all that different. Both are simply based on intentional action by Sergeant Currington. Don't the strands tend to merge once that's the premise of the complaint, of the claim? I think that in this case, there is some merger and there may be some merger in other claims based on the facts, but that they are analytically distinct. Because one can have a Turner claim based on an official's action that is undertaken, not necessarily with animus, but with no legitimate rationale whatsoever. And if religion were repressed in that way, without a legitimate rationale, but also without animus, that would be sufficient to state a Turner legitimate, penological interest claim. But for purposes of this case, ultimately I agree with you, Judge Matheson, because much of the evidence intersects the fact that Ashahed was treated in this rude and gruff manner, the fact it was a clear departure from policy, the fact that the rationales that have been offered by my friend on the other side ultimately don't make sense, ultimately support both the fact that there is no legitimate, penological interest here, as well as the fact that this was action that was undertaken on the basis of animus and that the proffered reasons are pretextual. But what you're saying there is that you could have this Turner claim where the jury would not have to find religious animus, but they would have to find an animus related to arbitrariness, correct? I'm not sure that I would characterize it as an animus related to arbitrariness in the sense that I understand the Turner test. Okay, then it would be arbitrariness. It would be unrelated to anything. You would not have to show any animus towards Islam, correct? That's correct. It is a claim that religion was... Oh, I'm sorry. Doesn't that mean it is no longer the First Amendment? It has nothing to do with religion? No, your honor. The motivation does not necessarily figure into the Turner-style analysis. It is an objective inquiry as to whether there is a legitimate and rational reason for a limitation of the exercise of faith. Well, then look, I mean, I think Judge Matheson has a very interesting point. Then what we have to do is we have to anticipate how this First Amendment claim would be presented to a jury. So you would have a jury instruction, and I don't see how you would have anything but a single jury instruction on this claim. Can you tell me how you would instruct the jury? Yes, your honor. I can, and then I'd like to reserve the limited remainder of my time. The jury would be instructed that you can find a First Amendment violation either because Ashiq Heed's religion was repressed on the basis of animus or because it was repressed without any rational connection to a legitimate penological rationale. I'll reserve the remainder unless there are further questions right now. Mr. Shapiro, I'll try to give you a little rebuttal time, but I think it would be best not to wait until then to ask you this question, because you have not touched on your equal protection theory. You have a free exercise theory. You have an equal protection theory, and could you briefly tell us what is your best authority on clearly established law on the equal protection claim, and particularly on the similarly situated component of equal protection? Well, first of all, your honor, it's not clear to me that the clearly established analysis goes to the nature of the comparator. We're arguing that the clearly established principle for purposes of the equal protection clause, as well as for purposes of the free exercise clause, is that you cannot discriminate against people on the basis of animus for their religion. In terms of the comparator, I think the best way to view it is that the policy creates an exemption, which Currington is alleged to have followed when it comes to Christians, Catholics wearing crosses, but he departs from the same policy when it comes to wearing a beard, for Muslims. So it's not just this abstract comparison of crosses to beards. It is that there is a policy on religious exemptions and religious accommodations, and Ashahid and the comparators are similarly situated in that their exercise is similarly protected by the policy, but they are treated disparately because Currington follows the policy when it comes to Catholic inmates and their exemption, but departs from it when it comes to Ashahid and those. Okay, I understand your argument, but just to be clear, to the extent that you need to establish, you need the clearly established prong of qualified immunity, are you relying on an obviousness theory there, as you articulated earlier in your argument? Yes, on the theory that it is obvious that under the equal protection clause that government officials cannot discriminate against faith based on animus. Okay, thank you, thank you. Thank you. All right, Mr. Luna, you may proceed. Good morning, and may it please the court. My name is Josh Luna. I represent the defendant appellee Thomas Currington. Here, the Colorado Department of Corrections general policy requires all inmates be clean-shaven during the intake process and provides a narrow exception for inmates who wear a beard due to a sincerely held religious belief. Now, as this court knows, Mr. Ashahid bears a heavy two-part burden to overcome qualified immunity by showing, first, that Mr. Currington violated his constitutional rights, and second, that the right was clearly established at the time of the violation in the particular circumstances faced by Mr. Currington. It's our position that Mr. Ashahid has failed to meet his burden on either prong, and I think that it's helpful to start with the claim for religious discrimination, and in particular, the Iqbal standard is clear that in order to plead a religious discrimination claim, the plaintiff must establish a discriminatory purpose, and that is a decision maker's undertaking of a course of action because of, not merely in spite of, the action's adverse consequences. Counsel, could I just interrupt for one clarification? When you say the religious discrimination claim, I'm not clear whether you're talking about the free exercise claim or the equal protection claim. Well, Your Honor, and I can clear that confusion up at the outset. It's our position, as the district court voiced this concern as well, that it's clear that Mr. Ashahid is trying to pursue a religious discrimination claim, and this court in Carr v. Walley noted that, you know, when that's the theory, it's the Iqbal standard that applies. Well, no, no, no. Is it, is it, are you relying on, is the claim, are you responding to a free exercise claim, or are you responding to an equal protection claim? Responding to the free exercise claim. All right. As well as the equal protection claim, too, Your Honor. I mean, we're not, not ceding that, not ceding that point as well, but. Okay, go ahead. Yes, but, but in particular, in looking at the particular allegations for the religious discrimination claim, you know, it's clear, as Mr. Ashahid admits in the complaint, that initially Mr. Currington sought to abide by the general policy by requiring him that he shave his beard, as is the case with all incoming inmates. And then we have this full beard colloquy, you know, that Mr. Currington stated that he needed a full beard in order to qualify for the exemption. Now, my friend on the other side argues that that's so illogical and absurd that it infers only animus, but they didn't pre-claim that this was a pretext at all, nor are there any factual allegations that would let this court reasonably infer that Currington invented or concocted this excuse. Rather, on its face, all that it plausibly suggests is that Currington was mistaken about the exception to the general policy. And in particular, your honor. Isn't that a very fine line to draw when you're dealing with a 12 v. 6 motion versus a motion for summary judgment? I mean, it seems to me that you are saying that there are two inferences can be drawn, and because it's not pled right, you draw this inference. That seems to me what you're saying. Well, your honor, I think that this goes back to the standard. The burden that Mr. Ashaheed had to plead was because of, not merely in spite of, discriminatory purpose with respect to his religion. And there are no facts indicating that Sgt. Currington acted out of animus for Mr. Ashaheed's faith. As the facts are alleged, there is no legitimate inference that it was animus based on his religion? No, your honor. And that's because the full beard discussion on its face suggests a simple mistake. There are no other allegations suggesting that. Does it completely negate the inference of animus base? Or does it just provide a possible different inference? No, your honor. I think that it to other cases on which Mr. Ashaheed relies, the Marshall case, for instance, that, you know, there they made the plaintiff shave because they didn't like his religious hairstyle. And then once it began to grow out again, they harassed him about it. Here, we have nothing else. We have no statements suggesting that this was because of Mr. Ashaheed's faith, as opposed to because of a confusion or a reasonable but mistaken belief that the general policy requiring all inmates be clean-shaven on intake applied. And in particular, your honors, I want to touch on a couple of points. Does it matter that he threatened that Currington allegedly responded, that he didn't want to hear about it, that he threatened retaliation, stating that Ashaheed would be thrown into the here? Well, your honor, it certainly is within the, you know, the court's purview to consider those statements. But I think it's important to look at the context of those statements. Are we required to look at those statements? Aren't we required to add them to the mix? Isn't that exactly what our job is? Yeah, yes, your honor. How can we possibly just say, well, we can look at these statements and we can just assume this was just a big mistake? Well, your honor, I think that's not supported, I think. As is alleged in the complaint, that statement, the didn't want to hear about it, occurred after this full beard colloquy already, which on its face suggests a mistake. It occurred as part of the whole, it wasn't a separate day later comment. This was part of the entire event. Yes, your honor. And I think that that another fact that's stated in the complaint is just sort of the context of the prison intake system. You know, it's clear they're going through classification. They're documenting his religious faith and then moving him on for a physical examination, documenting his tattoos, as well as, you know, having him shower. And then they're going through this process. And I think in context, all of that plausibly suggests is Sergeant Currington had heard him out. He inferences about what he mistakenly believed. We can't get those inferences from here. I think that the statement that he didn't want to hear about it is a reflection of simply trying to move him along. You think it is. I'm asking what can we infer from the facts? And I don't think we can infer what Mr. Luna thinks. Understood, your honor. And in the particular context of the complaint, as it's alleged, the facts demonstrate, you know, while it didn't want to hear about it, isn't a sugarcoated response. It says nothing about Mr. Ashaheed's religion. There are no similar statements like, I don't want to hear about it. I don't want to hear about your religion or I don't believe what you believe. How about threatening retaliation, threatening to throw him in solitary confinement? Can't we make inferences from that extreme response to his assertion of his religious rights? Well, your honor, that is a reflection of what may happen in the prison setting when the officer gives what he believes to be a direct lawful order and is meeting resistance with that. It has nothing to do with that it was because of Mr. Ashaheed's faith. And that's the standard here. You know, we don't have any allegations showing that Mr. Currington allowed inmates of other faiths to keep their beard or any inmates of any faith. Mr. Luna, in, oh, I would say a minute and a half of the portion of your exchange with Judge Moritz, you used the expression context at least five times. Is context an appropriate matter in a 12 v six consideration, or is it more appropriate that you address context at summary judgment or trial? Well, your honor, I think that this touches on another point that I wanted to turn to, which is qualified immunity. And there we're told that the particular circumstances and the context do matter. You know, at bottom, all that is alleged here is a single instance of a failure to recognize Mr. Ashaheed's entitlement to the beard shaving exception from the general rule. We have this colloquy that on its face, plausibly suggests a mistake about that. And that that kind of cuts to the core of qualified immunity, which is to give government officials ample room to make reasonable but mistaken judgments. It possibly suggests that, but that does not eliminate that it plausibly suggests the opposite, does it? Well, your honor, we don't have any statements. You know, it's the plaintiff's burden to paint a picture to show that he was discriminated of not in spite of his religion, but because of his religion. And in some of the other cases that we have, you know, Marshall versus Wyoming Department of Corrections, as I said, we have sufficient factual allegations that they targeted this specific inmate because of his religious hairstyle and forced him to shave it because they didn't like it. We don't have any similar statements of indicating animus. We don't have any expressions, facial expressions or laughter or anything that coupled with the facts here may plausibly state a claim for religious discrimination. But on its face, all it suggests is a mistaken application of an exception to a general policy. And in particular, your honors, I think there's this notion that violating a policy somehow equates to a constitutional violation or constitutes clearly established law for qualified immunity purposes. And the Supreme Court and this court have soundly rejected those notions. And in particular, your honor, Judge Moritz, I'd like to touch on Holt versus in particular there, the Supreme Court confronted a prison system that disallowed beards entirely. And the court observed that prisons have a compelling interest in the quick and reliable identification of inmates. And as the petitioner suggested in that case, the court could, the court stated that, you know, the prison system could meet its really exacting burden under our LUPA by requiring inmates to be clean shaven when they first arrive at a facility, photographed and then allowed to grow their beards out. So essentially what we have here is on the clearly established ground, we have one unpublished decision in Marshall that Mr. Oshahed relies on to show that this was a clearly established violation. And on its face, that's insufficient to constitute clearly established law. First, as this court has repeatedly held, a single unpublished decision is insufficient to show that the law was clearly established on a basis. And if it's not clear sufficient, Marshall is too dissimilar from this case to have given Mr. Currington fair notice that his conduct was unlawful. And there in particular, as I've touched on the facts a little bit earlier, the prison system generally allowed inmates to wear religious hairstyles. And the plaintiff alleged in that case that prison officials essentially targeted him, forced him to shave his religious hairstyle. And then after he was transferred to prison and it began to grow out, they harassed him about his religious hairstyle again. On its face, that plausibly establishes, because of discrimination, a pattern of consistent targeting and discrimination because of his religious hairstyle. Whereas here, although we have... Mr. Looney, let me ask this, and this has to do with how a court is to construct a law. Is there any indication in that amended complaint of how it was that the officer got the idea that the religious rule on the beard required a full beard? Is there any indication where the officer got that? No, your honor, but you know... Doesn't that raise the inference that the officer was really focusing on the religion? He knew about this. He knew that the religious rule was that it was a full beard, not a little scraggly beard. Isn't that an inference? No, your honor. I think that it reflects a simple mistake. And you know, it's important to note that the policy itself isn't the only documentation around beards. No, we're not talking about a mistake about the religious view. You're saying it was a mistake on applying the policy. I'm talking about the religious concept of having a full beard. This officer knew something about this that is not anywhere discussed. And that is, he knew that the Islamist requirement is a full beard, not a scraggly little beard. Well, your honor, I think getting to the notion of the documentation that officers are provided on this, you know, there is documentation from the Office of Faith and Citizens Programs that notes corrections officers could expect inmates, such as Muslim inmates or Sikh inmates, who oppose shaving their beards due to religious tenets, could expect a full beard on intake. And that may help explain some of the context around this. I see that my time is up. That would take us outside the record, wouldn't it? Your honor, that's actually on page 183 of the record. I'm talking about outside of the complaint, which reminds me, I guess I'm a little, the complaint itself didn't have anything attached, right? No, your honor. What are you referring to when you say one page 183? Yeah, it is one page 183. In response to the first motion to dismiss, Mr. Ashaheed's counsel attached a series of policies, and this particular guidance is from the Office of Faith and Citizens Programs, and it is in the record. But it doesn't matter if it's in the record. I guess that was my question. I questioned why anybody's talking about any of that, because this is a motion to dismiss, and the court didn't convert it to a summary judgment motion, and nobody talked about the fact that these were entirely outside the complaint pleadings. I'm confused by that. It may be in the record, but it's not something that we can review. I understand, your honor, and I see that I am out of time. If I could just briefly conclude. Well, you are out of time, but I'm going to ask you an equal protection question, just like I did Mr. Shapiro. Why weren't the allegations that other inmates received accommodation to keep religious materials enough to allege an equal protection claim here? I understand that keeping a Bible versus keeping a beard is factually different, but is there really any difference in terms of receiving a religious accommodation? Here, the accommodation would be the exemption, so he keeps the beard. Then he alleges that accommodations have been given to other prisoners. Why isn't that enough? Well, your honor, I think that there are a couple of points to your answer. We don't have any allegations about what the policies were on as to religious items, or how broad or narrow those exemptions were, and so it's tough to compare that on its face. But even putting that notion aside, this court's precedent is clear that for the similarly situated analysis, the people must be alike in all relevant respects. That's plainly not the case that we have here. Counsel, why aren't they alike in that they're both seeking accommodations based on their religious items? Religious items don't change one's appearance as does beard. That's a first instance. Also, the notion that taking Mr. Oshakede's arguments on appeal to the logical end, the notion that you state a plausible claim for religious discrimination, which again, we contest that, the notion that you state a plausible claim for religious discrimination as a matter of law also states a claim for equal protection that runs directly contrary to this court's precedent. Mr. Luna, have you ever been in a trial court where prisoners are brought up and the prison priest has handed out to all of the prisoners, if they so choose, a rosary that goes around their neck. And so when you're observing them, it looks like part of their dress. Have you ever experienced that? I have not, your honor. Okay, thank you. And for these reasons, we would ask that this court affirm the district court's dismissal of this case. Thank you. All right. Thank you. Thank you, counsel. Let's give Mr. Shapiro one minute. Thank you, your honor. I take it that it is sufficiently clear at the pleading stage that there are sufficient allegations of animus and that the law is clearly established under the free exercise clause that government officials cannot discriminate against religious exercise on the basis of animus. So I want to briefly clarify two doctrinal points. First, as to the equal protection clause, the principle is quite clearly set out in United States v. Batchelder. The equal protection clause prohibits selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification. And it's clear enough that that is what's going on here, at least for purposes of 12b-6. Second, as to the question that we discussed a bit at the end of my original presentation as to Turner as applied to individual actions, I want to direct this court to the Bowles v. Neate decision, which says that individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise. So it's the same rationality and legitimate penological interest analysis. Thank you, your honor. And that case is cited in your brief. Yes, it is, your honor. Right now, I'm looking at pages 16 to 17 of our reply brief, but I know it's also cited in our opening brief. Bowles v. Neate. Thank you. Any other questions? All right. Thank you to both of you. Very interesting case and the arguments well presented and helpful. So thank you very much. The case will be submitted and counsel are excused.